**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40570**

| | | |
|---|---|---|
| JEREMY TODD HILL, | ) | 2014 Unpublished Opinion No. 426 |
| | ) | |
| Petitioner-Appellant, | ) | Filed: March 24, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STATE OF IDAHO, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Respondent. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

Judgment summarily dismissing petition for post-conviction relief, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Jeremy Todd Hill filed a petition for post-conviction relief after the statute of limitations had run. In the district court, he asserted that his late filing should be excused under the principle of equitable tolling. He argued that the untimeliness of his petition was caused by the inadequacy of the legal resources available to him while in jail and prison and that these inadequacies amounted to a denial of his right to access the courts. The district court held that the statute of limitations was not equitably tolled because prison resources were adequate. As an alternative basis for its ruling, the district court found that even if the resources were inadequate, any inadequacy was not the cause of Hill's late filing. On this basis, the district court dismissed Hill's post-conviction action. Hill appeals and continues to assert his argument that the statute of limitations for his petition should be equitably tolled.

1

## I.

## BACKGROUND

Hill was convicted of trafficking in methamphetamine in violation of Idaho Code § 37-2732B(a)(4). On March 28, 2011, he was sentenced to a fixed term of six years and six months of imprisonment. No direct appeal was filed.

On July 17, 2012, Hill filed a petition for post-conviction relief. He raised two claims of ineffective assistance of counsel and a claim that his guilty plea was not knowing and voluntary. Along with his petition, he filed a motion requesting the appointment of counsel and a memorandum of law.

The court, sua sponte, filed a notice of its intent to dismiss the post-conviction action because it was time-barred by the applicable statute of limitations. The notice explained that the statute of limitations required that Hill's petition be filed within a period of one year and forty-two days of his judgment of conviction, a period that expired in May 2011. Hill responded, pro se, by arguing that he was entitled to equitable tolling because he had been held without access to legal materials. He asserted he was held in the county jail for several weeks, that he was transferred to the Reception and Diagnostic Unit (RDU) when he first arrived in prison, and that he was placed in Unit 8 or "the hole" for weeks. He claimed he was denied access to legal resources in each of these locations. Furthermore, he asserted that even when held in other areas of the prison, the resources available were deficient. He claimed that the prison paralegals refused to offer legal advice and that the law library did not contain any case law. In response to Hill's pro se filing, the court appointed counsel for Hill and directed the State to respond to Hill's briefing.

The court ordered a bifurcated evidentiary hearing. At the first hearing, the parties were permitted to present evidence relating to equitable tolling. The second hearing was planned to address the merits of Hill's petition, but never occurred as the court decided the case on timeliness grounds.

At the hearing, Hill testified that he was denied access to legal materials in the county jail, the RDU, and while in "the hole," i.e., segregation. He also testified he could not recall receiving any written information regarding legal resources, but did admit that he may have signed a document indicating he went to an orientation at which he received a packet of written material. Hill and another inmate also testified regarding the legal resources made available to

2

them in prison.[1] They generally described the prison paralegals as unhelpful. They averred that the prison's legal resource center can only be used to make copies, mail documents, or get documents notarized. They also testified that an inmate must have specific knowledge of the precise materials he needs in order to get any particular resource from the prison law library. Finally, they said that the library at the prison does not contain the case law reporters that publish the decisions of this Court, the Idaho Supreme Court, and the relevant federal courts.

Conversely, the State presented evidence showing that Hill had attended an orientation meeting where he was given a packet of materials that notified him of the appropriate statute of limitations for a post-conviction action and described the general nature of such an action. The State also placed in evidence a packet containing additional materials regarding post-conviction actions, which Hill ultimately received according to the State's evidence. Prison staff testified that prisoners in the RDU and "the hole" have access to legal materials. The State also presented evidence that Hill had access to legal materials while in the RDU.

After the hearing, the court issued a written decision dismissing Hill's post-conviction action. It concluded that Hill was not credible when he claimed to have been denied legal materials in the RDU and in "the hole." Instead, it credited a witness for the State who testified that legal materials were made available to Hill. The court concluded that these legal materials were sufficient to advise him of the nature of a post-conviction action and the applicable statute of limitations. It also concluded that Hill was not prejudiced by any deficiency in the resources made available to him. Rather than concluding that Hill was prejudiced by actions of the State, the district court concluded that Hill's delay in filing his petition while in State custody was solely attributed to him. Therefore, even assuming that Hill was denied access to the courts while in county jail and was entitled to equitable tolling for that time, his petition would still be untimely and subject to dismissal.

---

[1] Also in the record is an offender concern form wherein Hill asked where he should look to find information applicable to a post-conviction claim and "to find out what a post-conviction is." The import of this document is unclear as it was dated September 18, 2012, and Hill had filed his post-conviction petition over two months earlier, on July 17, 2012. Moreover, the exhibit appears to be missing critical context as the response indicates that the concern form is duplicative, and we have no record of the contents of Hill's prior request or the paralegal's prior response. For these reasons, we do not assume that the paralegal's response was necessarily deficient. It is entirely possible that the paralegal's prior response adequately addressed Hill's concern and his new request was entirely duplicative.

3

On appeal, Hill argues that he is entitled to equitable tolling because he was denied access to the courts. He claims that the materials he received were insufficient to alert him to the nature of the claim he should file and the appropriate statute of limitations. He also argues, more generally, that the resources available in the prison are constitutionally insufficient, that the paralegals are insufficient because they cannot provide legal advice, and the prison libraries are insufficient because they do not contain case reporters. For all these reasons, he requests that we reverse the decision of the district court.

## II.

## ANALYSIS

In order to prevail in a post-conviction proceeding, the petitioner must prove the allegations by a preponderance of the evidence. I.C. § 19-4907; *Stuart v. State*, 118 Idaho 865, 801 P.2d 1216 (1990). When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous.[2] I.R.C.P. 52(a); *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct. App. 1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Larkin v. State*, 115 Idaho 72, 73, 764 P.2d 439, 440 (Ct. App. 1988). We exercise free review of the district court's application of the relevant law to the facts. *Nellsch v. State*, 122 Idaho 426, 434, 835 P.2d 661, 669 (Ct. App. 1992).

The statute of limitation for post-conviction actions provides that a petition for post-conviction relief may be filed at any time within one year from the expiration of the time for appeal or from the determination of appeal or from the determination of a proceeding following an appeal, whichever is later. I.C. § 19-4902(a). The appeal referenced in that section means the appeal in the underlying criminal case. *Freeman v. State*, 122 Idaho 627, 628, 836 P.2d 1088,

---

[2] Hill argues that the standard of review for summary dismissals should be applied to this appeal. We disagree. The district court held what it described as a bifurcated evidentiary hearing. The first portion of that hearing focused on the statute of limitations and the access to the courts issue. The second portion of the hearing would have focused on the merits of Hill's claim. The plan to hold a second hearing was obviated by the district court's decision regarding the access to the courts issue. Below, the parties submitted evidence and adduced testimony on the issues relevant to this appeal. Accordingly, the standard of review applicable to decisions rendered after an evidentiary hearing is appropriately applied to this case.

1089 (Ct. App. 1982). The failure to file a timely petition is a basis for dismissal of the petition. *Sayas v. State*, 139 Idaho 957, 959, 88 P.3d 776, 778 (Ct. App. 2003).

Equitable tolling may excuse the untimely filing of a petition for post-conviction relief. "Equitable tolling in a post-conviction action has been recognized by Idaho appellate courts in two circumstances--where the petitioner was incarcerated in an out-of-state facility without legal representation or access to Idaho legal materials, and where mental disease and/or psychotropic medication prevented the petitioner from timely pursuing challenges to the conviction." *Leer v. State*, 148 Idaho 112, 115, 218 P.3d 1173, 1176 (Ct. App. 2009) (internal citations omitted). "The bar for equitable tolling for post-conviction actions is high." *Id.* (quoting *Chico-Rodriguez v. State*, 141 Idaho 579, 582, 114 P.3d 137, 140 (Ct. App. 2005)). "American courts generally have applied equitable tolling only in rare and exceptional circumstances beyond the petitioner's control that prevented him or her from filing a timely petition." *Leer*, 148 Idaho at 115, 218 P.3d at 1176.

In *Martinez v. State*, 130 Idaho 530, 535, 944 P.2d 127, 132 (Ct. App. 1997), this Court discussed the connection between equitable tolling and the constitutional requirement that prisoners be afforded access to the courts. Under the federal constitution, prisoners must be provided adequate access to courts so that they may challenge unlawful convictions and vindicate constitutional rights. *Id*. We have interpreted the guarantee in Art. I, § 18, of the Idaho Constitution, that "courts of justice shall be open to every person," to similarly require the State to provide prisoners access to the courts. *Martinez*, 130 Idaho at 536, 944 P.2d at 133. Moreover, we held that both the United States and Idaho Constitutions require that the State take affirmative steps to provide inmates aid in accessing courts. *Id*. These requirements are set forth in *Bounds v. Smith*, 430 U.S. 817 (1977). That decision states that the government may meet its obligations by "providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. Alternatively, the Court encouraged "local experimentation," noting that "a legal access program need not include any particular element we have discussed." *Id*. at 832.

However, to show an access to the courts violation, a prisoner must do more than show that the resources available to him are deficient. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). "[P]rison law libraries and legal assistance programs are not ends in themselves . . . . *Bounds* did not create an abstract, freestanding right to a law library or legal assistance." *Lewis*, 518 U.S. at

351. Therefore, a prisoner asserting an access to the courts claim cannot complain that the "prison's law library or legal assistance program is subpar in some theoretical sense." *Id*. Instead, "an inmate must show that the alleged inadequacies of a prison's library facilities or legal assistance program caused him 'actual injury'--that is, actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id*. (internal marks omitted).

Taken together, *Martinez*, *Bounds*, and *Lewis* stand for the position that a party asserting an access to the courts claim must make two factual showings. First, he must show that the resources provided by the State are inadequate. Second he must show that he suffered an "actual injury."

Hill contends that he has provided sufficient evidence to meet both prongs of the test set forth in *Lewis*--he claims he has shown the inadequacy of the resources the State provided and his "actual injury." Hill attempted to show that the resources made available in the jail were inadequate because they amounted to neither adequate law libraries nor adequate legal assistance. Hill contends that the lack of case law reporters at the jail library would render the law library deficient. The alternative of the State providing access to prison paralegals did not amount to adequate assistance, he asserts, because they are unable or unwilling to provide any legal advice. As to his "actual injury" or prejudice, Hill claims that he "had no way of knowing that he had to file a post-conviction petition in order to raise the legal challenges he wished to make." He contends that because he did not know which action to file, "he did not know the time constraints set by the relevant statutes of limitations."

The district court held that Hill failed to show he was denied access to the courts because the resources offered were sufficient in that the State offered meaningful assistance in completing post-conviction petitions. It also held that Hill failed to show any actual injury. On appeal, this Court need not and does not decide if the resources the State provides to inmates are generally adequate. Because we can affirm the judgment of the district court on narrow grounds, "actual injury," we need not reach the broader constitutional issue.

The district court concluded that Hill did not show prejudice on the factual record adduced at the evidentiary hearing. There is obviously no transcript of the orientation Hill attended when he was first placed in State custody, but the district court could reasonably infer the substance of that orientation from the testimony of prison staff and from later events. First,

6

an exhibit indicates that Hill signed in to attend a briefing performed by jail legal staff. Second, the prison paralegal responsible for overseeing the legal portion of the orientation testified regarding the usual practice at these orientations. He testified that during orientation briefings, inmates are given a packet that describes what resources the paralegal can provide to an inmate. As relevant here, the packet indicates that materials related to post-conviction actions are made available to prisoners. Third, the record contains an activity log. The first entry, dated April 15, 2011, indicates that Hill requested and received forms from the paralegal pertaining to Idaho Criminal Rule 35. From these three factors, the court could reasonably infer that Hill attended the orientation, that he received the packet stating what legal materials were available, and that he read the packet or otherwise made use of the information contained therein. From these facts, the court also reasonably inferred that Hill was provided the materials necessary to know when his petition for post-conviction relief should be filed.

Moreover, it is plain from the record that Hill received the same informational packet a second time. After filing his Rule 35 motion, Hill again requested the aid of the paralegal. It is not clear what Hill requested, but the paralegal responded by sending Hill the orientation packet describing what materials were available and stating the statute of limitations for post-conviction actions.

Relying upon this evidence and the reasonable inferences drawn from the evidence, the district court rejected many of Hill's factual claims. It rejected the claim that no legal resources were available while Hill was in the RDU. Indeed, the record shows that Hill requested and received legal materials while in that unit. The court also concluded that Hill's testimony that he was denied legal documents while in administrative segregation was not credible. Because we conclude that these findings are not clearly erroneous, we will not disturb them on appeal. *Russell*, 118 Idaho at 67, 794 P.2d at 656.

As stated in *Lewis*, a prisoner may demonstrate that he was denied access to the courts by showing that the resources made available left him unable "to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348. The packet given to Hill at orientation contained three relevant pieces of information. First, the packet described, albeit generally, the purpose of a post-conviction action. It explained that such a petition "is a means to attain a relief for the individual who believes he/she is incarcerated in violation of the Constitution of the United States or the Constitution or the laws of the State of Idaho." Second, it also set forth the statute

7

of limitations that applies to a post-conviction action. Finally, it unambiguously indicated what steps a prisoner should take if he wants to learn more: a prisoner who wanted "more detailed information" should "consult the instruction section" of the specific packet made available for each of the "qualified legal claims."

The post-conviction packet, which was also submitted as an exhibit in this case, contains even more detail. As is most relevant here, the form states the deadline for filing a post-conviction action. It also contains a list of statutes and rules relevant to bringing a post-conviction action. For example, the packet lists the permissible grounds for a post-conviction action as set forth in I.C. § 19-4901 and also common claims for relief set forth in laymen's terms. Moreover, the packet contains a list of helpful notes regarding discovery, the distinction between a direct appeal and a post-conviction action, and information regarding affidavits. Finally, the post-conviction packet contains pre-printed forms on which a prisoner may handwrite his petition.

We conclude that the initial packet provided Hill with information sufficient to inform him that a petition for post-conviction relief might be an appropriate means of raising his claims. It also informed him that there was a deadline. However, instead of making use of these prison resources, Hill may have failed to request the post-conviction packet until after the statute of limitations had run.

If Hill had requested and read the post-conviction packet, he would have been informed that the claims he wished to bring were properly brought through a post-conviction action. In his petition, Hill raised three claims for relief. He claimed his attorney was ineffective when he failed to object to immediate sentencing and when he failed to file an appeal. He also claimed that his guilty plea should be set aside because it was not knowing and voluntary. The post-conviction packet lists common grounds for post-conviction relief. Included on the list are claims that one's plea was invalid and claims of ineffective assistance of counsel at trial and on appeal. All of the substantive claims Hill pursued were explicitly discussed in the post-conviction packet.

For all of these reasons, we, like the district court, conclude that Hill's failure to timely file his petition was caused by his own inaction. The prison informed Hill of the general nature of the causes of action he might pursue and that the clock was running. It made clear that more resources were available if Hill asked. Hill apparently did not ask until it was too late. We

conclude that Hill's claim is implicitly predicated on the assertion that the resources offered by the State, *if used*, are inadequate. But, here, where Hill failed to use the resources as a reasonable person would, he cannot show that the inadequacy, if any, of the resources provided caused his injury. In our view, Hill has sought relief where the United States Supreme Court has held that none is available; he has asserted a claim for relief essentially arguing that the resources the State offered are "subpar in some theoretical sense." Therefore, we conclude that Hill has failed to show that the district court erred.

## III.

## CONCLUSION

Hill claims that he was denied access to the courts and is, therefore, entitled to equitable tolling. We need not and do not decide whether the resources made available in Idaho prisons are sufficient for all purposes. Instead, we conclude the district court was correct in finding that Hill's failure to timely file was his own doing. Therefore, he was not prejudiced and is not entitled to equitable tolling. For these reasons, the judgment of the district court dismissing Hill's post-conviction relief action is affirmed.

Chief Judge GUTIERREZ and Judge GRATTON **CONCUR.**